### EDSON & HAMM, Inc., v. MURRAY.
### (No. 1386.)

(Court of Civil Appeals of Texas. Beaumont. May 21, 1926.)

1. **Appeal and error ⬚719(8)—Finding of market value of automobile at time of its destruction held binding on reviewing court, in absence of assignment of error.**

In action on notes and to foreclose chattel mortgage given in part payment of automobile sold defendant, trial court's finding of fact as to market value of automobile at time of its destruction *held* binding on reviewing court, where there was no assignment of error in record challenging such finding; it being immaterial that appellant excepted to judgment.

2. **Interest ⬚50.**

Ordinarily, to defeat a recovery for interest on an obligation payable in money, a tender of principal amount in money must be made.

3. **Interest ⬚50—Offer by payor to discharge his obligation to payee by letting it be offset by amount of his demand against payee is sufficient tender to stop interest by payor on his obligation from time of such tender.**

Where payor in good faith insisted that payee was justly indebted to him, and offered to discharge his obligation to payee by letting it be offset by amount of his demand against payee, *held*, that there was a sufficient tender by payor to stop interest on his obligation from time of tender.

Appeal from County Court, Jefferson County; C. N. Ellis, Judge.

Suit by Edson & Hamm, Inc., against H. B. Murray, consolidated with suit by H. B. Murray against Edson & Hamm, Inc. Judgment for plaintiffs in both actions, and, one judgment being offset against the other, Edson & Hamm, Inc., appeal. Affirmed.

A. Ludlow Calhoun, of Beaumont, for appellant.

Conley & Renfro, of Beaumont, for appellee.

HIGHTOWER, C. J. This controversy arose from the following facts:

On or about July 21, 1924, the appellant, Edson & Hamm, Inc., automobile dealers in the city of Beaumont, sold and delivered to appellee, H. B. Murray, a Gardner coupé automobile at the agreed price of $950, to be paid as follows:

"Appellee was the owner of a Star touring car, and appellant agreed to take appellee's car as part payment for the Gardner coupé, and to allow appellee for his car $350 and the balance of the purchase money for the Gardner coupé, to wit, $600, was to be evidenced by appellee's eleven promissory notes in the amount of $35 each, with the exception of the last note, which was to be for the amount of $275. These notes were made payable one every 30 days after date, and it was provided in each of them that they were to bear interest from maturity at the rate of 10 per cent. per annum, and that, if placed in the hands of an attorney for collection, appellee would pay 15 per cent. of the amount of the notes as attorney's fees."

Appellee turned over his Star touring car to appellant when the trade was closed, and the appellant delivered to appellee the Gardner coupé. A chattel mortgage was also executed by appellee in favor of appellant on the Gardner coupé to secure the payment of the notes representing the balance of the purchase money.

The evidence shows that about eight months after appellee had purchased the Gardner car it was destroyed by fire while appellee was using it, and he immediately notified appellant of the car's destruction, and on the same evening or the next day went in person to appellant's office, and explained to appellant the destruction of his car by fire, and told appellant that he was ready to pay to appellant the amount of the unpaid notes held against him by appellant, none of which at that time were due, and the principal amount of which was $415, but in that connection stated to appellant that he would have to get the money with which to pay the notes out of his insurance policy, which he had been informed and understood, according to the agreement of the parties, appellant had taken out to cover the value of the Gardner coupé and its loss against destruction by fire or theft. Appellee was then informed by appellant that it had not taken out any policy on the Gardner coupé insuring it against any risk, and insisted that appellee should pay to it the full amount of the unpaid notes, aggregating, as we have stated, $415. Appellee then declined to pay either of the outstanding notes, claiming to appellant that it had promised and agreed, at the time he bought the Gardner coupé, to take out insurance on the same against its destruction by fire and theft, and that, having breached its agreement to take out the insurance policy, appellant had caused him to lose the value of his car, and that he was damaged by its breach of contract and fraud and deceit in failing to take out the insurance policy to the extent of the value of his car, and that he would hold appellant responsible for his loss.

Appellant, after appellee had declined to pay any of the outstanding notes, filed suit against appellee in the county court of Jefferson county at law on the notes aggregating $415 principal amount, and providing for 10 per cent. interest and 15 per cent. attorney's fees, as we have stated, and in

that suit appellee answered by general demurrer and general denial, and other pleas not necessary here to state.

Thereafter appellee filed suit against appellant in the county court of Jefferson county at law, in which he alleged, substantially, that, at the time he bought the Gardner coupé from appellant, appellant, through its duly authorized agent, promised and agreed to take out an insurance policy in a responsible insurance company covering the loss of the car by fire and theft, and that appellant agreed to hold the policy in its possession with the loss clause payable to it. until appellee should pay all of his outstanding notes, and that appellant would then deliver the policy to appellee; that appellee was thereafter informed by appellant that it had taken out insurance on the Gardner coupé payable to itself as its interest might appear, and that appellee relied in good faith upon the promise and agreement on the part of appellant to cover the Gardner car by insurance, and paid to appellant, upon its demand, $60 as a premium for such insurance at the time of the purchase of the car, and that, had he known that appellant had not taken out insurance on the car, he would have demanded back his $60 that he paid to them 'as a premium, and would have insured his car himself. There were other allegations in appellee's petition unnecessary to mention.

When the case was reached for trial, the two suits were consolidated and tried as one before the court without a jury, and judgment was rendered in favor of appellant, Edson & Hamm, Inc., against appellee for $415, that being the principal amount of appellee's unpaid notes, and a judgment in favor of appellee against appellant in the sum of $600, that amount being the value, as found by the court, of appellee's automobile at the time of its destruction by fire, and by agreement of the parties the judgment in favor of appellee was offset by the judgment in favor of appellant, leaving the amount recovered by appellee against appellant of $185. The court declined to allow appellant interest or attorney's fees, holding that appellant, under the facts, was only entitled to recover the principal amount due on the unpaid notes.

Appellant has prosecuted this appeal and advances several contentions why the judgment should be reversed. Before taking up these contentions, it might be well to let this opinion shows the findings of fact made by the trial court as follows:

"That on. or about the 21st day of July, A. D., 1924, H. B. Murray (who will be styled plaintiff in these findings) was the owner of a Star touring car, and that negotiations were commenced whereby the plaintiff, H. B. Murray, purchased from the defendant, through its duly authorized agent, a Gardner coupé automobile, 1923 model and contracted to pay therefor the sum of $950 as follows: By trade-in of plaintiff's car an allowance of cash in the sum of $350, the balance to be represented by notes; 11 notes for $35 each, due monthly, and the first note being due and payable August 21, 1924, and one note for $275, and that said notes did not bear interest until after their respective maturity date, and after maturity said notes bear interest at the rate of 10 per cent. per annum, and, further, providing for 15 per cent. additional as attorney's fees.

"I further find that the trade was closed on or about the 21st day of July, 1924, and that plaintiff executed his notes in the sum of $660, payable to defendant, operating under its trade-name of San Jacinto Security Company.

"I further find that, at the time the trade was closed, plaintiff, H. B. Murray, inquired of the defendant about insurance on the Gardner coupé, and that defendant informed plaintiff, H. B. Murray, that they would take out insurance on the said car, and that the $60 over and above the $600 balance due on the purchase price would be applied to pay the premium on said policy for the first year, and that the policy would cover and insure the car (Gardner coupé) against loss due to damage by fire and/or theft, and that H. B. Murray, plaintiff, paid to defendant the said amount of $60.

"I further find that Edson-Hamm, Inc., contracted, promised, and agreed with the plaintiff, H. B. Murray, that it would take out insurance on the Gardner coupé against loss by reason of fire and/or theft for one year from the date of the sale to plaintiff, to wit, July 21, 1924. I further find that defendant represented to plaintiff that it was a part of their plan to have all cars they sold, where the purchase price or a part thereof was represented by notes, insured against loss by theft and/or fire, and that the policy must be left with them, the defendants, until the notes were fully paid out and discharged, and that the loss payable clause would be written in favor of the defendants as their interest appeared. I further find that defendant, Edson-Hamm, Inc., informed plaintiff at the time of the sale that this was their special way of handling the insurance on cars that they sold and that plaintiff would have to comply with the same. I find that plaintiff did comply with the terms of the contract, and paid to defendant the sum of $60 for the purpose of paying the premium on the policy for the first year. I further find that defendant failed and neglected to take out the insurance on the said car insuring it against loss by fire and/or theft as they had contracted and agreed to do.

"I further find that a few months later, to wit, three or four months, plaintiff, H. B. Murray, had a collision in which the Gardner coupé he purchased from defendant was damaged; that plaintiff, H. B. Murray, immediately took the car to defendant, and inquired if his policy covered collision, and defendant informed plaintiff that they had taken out the policy according to agreement, and was holding same in their possession, but that the policy did not cover collision; that it only covered loss by fire and/or theft.

"I further find that the said automobile burned up on or about two weeks before the eighth note was due, and was rendered of no value, that is, completely destroyed by fire, and that plaintiff, H. B. Murray, immediately notified defendant by wire of the accident, and the same day called at defendant's office in Beau-

mont, Tex., and offered to make a settlement, and inquired about his insurance policy, and that plaintiff offered to pay his notes then remaining unpaid, and asked defendant to deliver to him his policy or pay him the balance due him under said policy after deducting the amount of the notes, and defendant, for the first time, informed plaintiff that they had not taken out a policy on the said automobile, but had applied the $60 paid by plaintiff, for the purpose of securing the policy on said automobile to other purposes, to their own use and benefit.

"I further find that the value of a new car of that kind, age, make, and model could have been, at that time, insured against loss by fire and/or theft in a reputable, solvent company, for 80 per cent. of the value of a new car of the same make and model, and that the value or market price in Beaumont, of a car of the same make and model, new, is $1,275, and that said premium for the first year would not exceed $60.

"I further find that the market value of plaintiff's car, at the time it was destroyed by fire, was $600, and that, had defendant procured a policy on said car, in accordance with agreement and understanding between plaintiff and defendant, at the time of the purchase, that the said company issuing said policy, would have paid plaintiff, by reason of said policy and the loss of his car by fire, $600.

"I further find that at the time of the purchase of said automobile by plaintiff that defendant led plaintiff to believe that the $60 over and above the purchase price was for the purpose of procuring insurance on the said automobile, covering it against loss by fire and/or theft, and I further find that defendant represented to plaintiff that the loss payable clause would be made in their (defendant's) favor as their interest should appear, and they, defendants, demanded that said policy be left in their care and keeping until all of said notes should be fully paid and discharged; and I further find that plaintiff, H. B. Murray, relied upon said promise and agreement of defendant to purchase the insurance covering the car against loss by fire and/or theft, and that, so believing and relying, closed the trade and executed his notes in favor of defendant, and paid the sum of $60, which was deducted from the cash allowed on plaintiff's trade-in car, and I find that defendant failed and refused to carry out said agreement to purchase the insurance, insuring the said car against loss by fire and/or theft, but appropriated the money, to wit, $60, to their own use and benefit for some other purpose, and that, by reason of the acts and conduct of defendant, the plaintiff, H. B. Murray, has been damaged in the sum of $600, the market value of the car at the time of the fire.

"By agreement of the parties, made at the time of announcing ready for trial, that the greater judgment should be offset by the smaller, I therefore find that the judgment in favor of plaintiff, H. B. Murray, should be offset by the amount of the judgment rendered in favor of defendant, Edson-Hamm, Inc.; that is, the judgment for $600 should be offset, or credited with $415 leaving a balance in favor of H. B. Murray of the sum of $185.

"I find that at the date the car burned up plaintiff, H. B. Murray, had paid notes Nos. 1 to 7, inclusive; that there was a balance due of $415 on said notes."

And the court's legal conclusions were as follows:

"That the plaintiff, H. B. Murray, has been damaged by reason of the fraudulent act and conduct of the defendant in failing to carry out the terms of the contract and agreement to purchase insurance, insuring the said car against loss by fire and/or theft. That the amount of said damage is $600.

"I further conclude that, by reason of the promises and offer of plaintiff, Murray, to settle and pay his notes immediately after the fire, and before the notes now sued on were due, defendant is not entitled to interest and attorney's fees on said notes.

"I conclude that, by reason of the execution and delivery of said notes by plaintiff, H. B. Murray, to defendant, Edson-Hamm, Inc., that plaintiff, H. B. Murray, is indebted to defendant, Edson-Hamm, Inc., in the sum of $415, the balance due on said notes."

[1] One of the contentions advanced by counsel for appellant is that the court was in error in rendering judgment in favor of appellee for the amount of $600, as representing the value of his car, because, as contended by counsel for appellant, the evidence showed that the value of the car at the time of its destruction did not exceed $350 or $400. Appellant is not in a position to urge this contention before this court, for the reason that there is no assignment of error in the record challenging the trial court's finding that appellee's automobile had a market value of $600 at the time of its destruction. It is true appellant excepted to the judgment, but that is not equivalent to a challenge of this finding of the trial court by a proper assignment of error, and, in the absence of such assignment, the trial court's finding of fact as to the market value of appellee's car at the time of its destruction stands unchallenged, and is binding upon this court. North River Ins. Co. v. Corsicana Warehouse Co. (Tex. Civ. App.) 281 S. W. 217; Reed v. Murphy (Tex. Civ. App.) 276 S. W. 951, and authorities there cited.

[2, 3] Appellant makes the further contention that the trial court was in error in not allowing appellant a recovery for interest and attorney's fees, as provided by the notes sued on by it. Upon the unchallenged facts as found by the trial court, we think the trial court was correct in refusing to allow appellant interest and attorney's fees on the notes, because these facts show that appellee's contention that appellant was due him the amount of the market value of his car at the time of its destruction, by reason of its contract and agreement to carry insurance on the same, was made in good faith, and was a reasonable demand, under the circumstances, at the time appellee offered to take up the unpaid notes, none of which were due at the time, and it occurs to us that it would have been inequitable and un-

just, upon the peculiar facts of this case, to have awarded appellant a recovery for interest and attorney's fees. It is true that ordinarily, in order to defeat a recovery for interest on an obligation payable in money, a tender of the principal amount of the obligation in money must be made by the payor, but where, as here, the payor, in good faith, insists that the payee is justly indebted to him, and offers to discharge his obligation to the payee by letting it be offset by the amount of his demand against the payee, and such offer of settlement is found to be reasonable and made in good faith, we think that it is a sufficient tender by the payor to stop interest on his obligation from the time of such offer or tender. The following authorities are more or less in point. 33 C. J. 243, § 149; 33 C. J. 252, § 171; Engelbach v. Sampson (Tex. Civ. App.) 33 S. W. 596; Grogan v. Lea (Tex. Civ. App.) 269 S. W. 1070; Texas Bank & Trust Co. v. Kelly (Tex. Civ. App.) 202 S. W. 357.

Appellant further suggests, in the brief of its counsel, that there is fundamental error apparent upon the face of the record in this case, but we think the learned counsel is mistaken in this contention, and so hold.

It follows from the foregoing that this court is of the opinion that the judgment should be affirmed, and it has been so ordered.